Filed 12/7/20  P. v. Flynn CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C089048 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STKCRFE19960006890, SC061092B) |
| v. | |
| KELLY MARIE FLYNN, | |
| Defendant and Appellant. | |

In 1997, a jury found defendant Kelly Marie Flynn guilty of the first degree felony murder and kidnapping of Reginald Rachal; we affirmed the judgment in defendant's previous appeal from her underlying convictions.[1] (*People v. Flynn* (Jan. 25, 2000, C028425) [nonpub. opn.] (*Flynn*).)  While serving her 33-years-to-life sentence, the

---

[1]    We granted the parties' requests to augment the record with our prior unpublished opinion in *Flynn*, *supra*, C028425, as well as incorporate, by reference, the record in defendant's prior appeal.

Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, §§ 1-4), which amended the law governing murder liability under felony murder and natural and probable consequences theories, and provided a new procedure under Penal Code[2] section 1170.95 for eligible defendants to petition for recall and resentencing.

Defendant filed a section 1170.95 petition, but the trial court denied it after reviewing its file, including our prior unpublished opinion. The court determined in a memorandum of decision that defendant was not eligible for resentencing because the record showed she was a major participant as defined in section 190.2, subdivision (d).

Defendant appeals, arguing the court erred in determining she was ineligible for relief under section 1170.95. In her view, even if she was a major participant in the underlying kidnapping, she did not aid and abet the actual killer with the intent to kill and did not act with reckless indifference to human life. She thus contends that the trial court should have appointed her counsel, requested briefing from the parties, and then determined after a hearing whether the prosecutor could establish beyond a reasonable doubt that she was not entitled to relief under the statute.

The People originally argued the trial court's denial of defendant's petition was proper because our prior opinion showed she was a major participant in the kidnapping and killing of Rachal and that defendant acted with a reckless indifference to human life. Following supplemental briefing, however, the People now agree with defendant that the trial court erred by summarily denying her petition. They concede defendant made a prima facie case that she was eligible for relief, and that the trial court engaged in improper fact-finding in denying the petition at the prima facie stage. They request that we remand the matter to the trial court to conduct proceedings consistent with subdivisions (c) and (d) of section 1170.95.

---

[2]      Further undesignated statutory references are to the Penal Code.

2

We agree the trial court erred in summarily denying the petition because defendant made a prima facie case she was entitled to relief, and nothing in the record showed she was precluded from relief as a matter of law. We shall reverse and remand for further proceedings consistent with section 1170.95. We express no opinion on whether defendant is entitled to relief under the statute.

FACTUAL AND PROCEDURAL BACKGROUND

To facilitate our review of the court's order denying defendant's section 1170.95 petition, we incorporate the facts and proceedings from our unpublished opinion affirming defendant's convictions.[3] The facts underlying the crimes, according to our unpublished opinion, were as follows:

"In 1996, defendant lived with Kareem Sims and their son on West Mendocino Avenue in Stockton. Harry Haanstra and his friend, Gabe Gonzales, visited almost daily with Sims. On May 28, 1996, Gonzales told Haanstra that defendant had been raped. Sims talked to Gonzales and Haanstra about a plan to induce the alleged rapist, Reginald Rachal, to come to the West Mendocino Avenue house. Sims wanted to tie up Rachal and beat him. Sims settled on a plan that had defendant drive Rachal to the house, take him into a back room, put on a certain piece of recorded music as a signal and leave. Then Sims and Gonzales, armed with firearms, would surprise him, tie him up, and beat him. Defendant would meet Haanstra at a local park (Legion Park), switch cars, and then defendant would leave. Haanstra was supposed to drive Sims's Riviera around while Rachal was being assaulted to make it look like no one was home. The plan included taking Rachal back to his neighborhood after the beating to drop him off.

---

[3] Our unpublished opinion is part of defendant's record of conviction and may be properly considered in making the eligibility determination. (See *People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, review granted Mar. 18, 2020, S260493, citing *People v. Woodell* (1998) 17 Cal.4th 448, 456.)

3

"At about 10 p.m. on May 28, defendant drove off in Sims's Ford Explorer. Haanstra drove off in Sims's Riviera. Sims and Gonzales armed themselves and settled into a bathroom to wait.

"Within 10 to 15 minutes after going into the bathroom, Gonzales heard defendant arrive at the house along with Rachal. About 30 second after hearing the signal song being played, the two burst out of the bathroom and confronted Rachal. Sims hit Rachal in the head with the butt of a rifle and the gun discharged. Sims hit him about three or four more times with the gun butt. The gun discharged a second time.

"Meanwhile, Haanstra drove to Legion Park. There, he met defendant as planned. She seemed to be in a panic and told Haanstra she heard a shot. She was pale and shaking. They switched cars; defendant drove away in the Riviera while Haanstra drove the Explorer.

"When Haanstra returned to the West Mendocino Avenue house, Rachal was taped down to a chair and beaten to a bloody pulp. Blood was pouring out of a huge gash at the top of his head. Haanstra said to Gonzales, 'We got to end this. This guy has had it. Let's drop him off. Get it over with.' Rachal was bound, a pillowcase was placed over his head, and he was loaded into the rear of the Explorer. Sims drove to a levee.

"Sims threw Rachal down the embankment of the levee. He tried to cut the victim's throat with a knife unsuccessfully. A short time later, Sims shot Rachal in the head with a handgun. Rachal died from the gunshot wound and possible asphyxia due to suffocation.

"At trial, defendant testified on her own behalf. She met Rachal in the middle of May 1996. A couple of weeks later they engaged in rough sex. Defendant falsely told Sims she had been raped. Defendant testified she went along with Sims's plan because she was afraid of him. She drove Rachal to Sims's house as described above, gave the musical signal, heard a gunshot, and ran out of the house and drove away. She met Haanstra at Legion Park and traded cars.

4

"Angela DiLorenzo and Miriam Borquez were friends of defendant's who saw one another frequently in the spring of 1996. Defendant told them that she had been raped by Rachal. Defendant told DiLorenzo, 'I could kill him,' referring to Rachal.

"On May 31, 1996, defendant was interviewed by Stockton Police Detective Raquel Betti. Defendant said she asked Sims to scare Rachal after the alleged rape. She acknowledged that, after she drove Rachal to the West Mendocino Avenue house and Sims began to beat him up, her role was to go to Legion Park and trade cars with Haanstra because 'they needed the Explorer to transport Rachal after they beat him.' " (*Flynn*, *supra*, C028425 at pp. 2-4.)

Based on the above, the jury found defendant guilty of kidnapping and first degree felony murder. After denying defendant's motion for new trial or to reduce the first degree murder conviction to second degree murder, the trial court sentenced defendant to 25 years to life for the murder plus eight years for the kidnapping offense. Defendant's total aggregate prison term was 33 years to life.

In November 2018, defendant filed a form petition for resentencing pursuant to section 1170.95. On the form, she checked various boxes stating that a complaint was filed against her that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, that at trial she was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that she could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.

Defendant's petition also checked boxes specific to a conviction for first degree felony murder, claiming that she could not now be convicted of first degree felony murder because of changes to section 189, effective January 1, 2019. As pertinent here, defendant's petition averred that she was not the actual killer, that she did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual

5

killer in committing a first degree murder, and that she was not a major participant in the felony and did not act with reckless disregard to human life during the course of the underlying felony.

In the form petition, defendant requested that the court appoint her counsel. She mailed copies of the petition to the district attorney, the public defender, and her trial counsel.

On January 22, 2019, the trial court denied defendant's petition without first appointing her counsel or obtaining briefing from the parties. Although defendant's form petition checked all of the boxes to establish eligibility for resentencing, after reviewing the court's file, including this court's prior unpublished opinion, the trial court found that the petition was not accurate and that defendant was not eligible for resentencing. According to the court, defendant failed to satisfy the requirement of section 1170.95, subdivision (a)(3) -- that she could not be convicted of first or second degree murder because of changes to sections 188 or 189. Specifically, the court found that defendant still could be convicted of first degree murder notwithstanding the recent statutory amendments to section 189 because she was a major participant as defined in section 190.2. Defendant timely appealed the court's order denying her resentencing petition.

DISCUSSION

I

*Overview Of Senate Bill No. 1437*

Senate Bill No. 1437, effective January 1, 2019, "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that *murder* liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added [uncodified preamble].) The bill amended section 188, which defines malice, and

section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, § 2-3.) It also added new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 1437 redefined malice under section 188 to require that a principal acted with malice aforethought; malice may no longer be imputed to a person based solely on his or her participation in a crime. (Stats. 2018, ch. 1015, § 2.) Section 188, subdivision (a)(3) now provides in relevant part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

Section 189 was amended to include new subdivision (e), which provides:

"A participant in the perpetration or attempted perpetration of [particular crimes, including kidnapping] in which a death occurs is liable for murder only if one of the following is proven:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 15, § 3.)

7

Thus, the amended statute effectively made the crime of felony murder subject to the same requirements as special circumstances murder committed during the course of another felony under section 190.2, subdivision (a)(17).[4]

Senate Bill No. 1437 created a petitioning procedure under newly enacted section 1170.95 for those eligible to have their murder convictions vacated and to seek resentencing on the remaining counts. (Stats. 2018, ch. 15, § 4.) Under the new statute, "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.
[And]

---

[4] Section 190.2, subdivision (d) is a special circumstance allegation that, if charged and proven, subjects a defendant to either death or life without the possibility of parole. The statute provides: "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a [specified felony, including kidnapping], which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

"(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

A petitioning defendant must file a declaration stating that he or she meets the above criteria and may request counsel be appointed. (§ 1170.95, subd. (b)(1)(A), (C).)

Under subdivision (c) of section 1170.95, "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."[5]

---

[5]     Multiple recently published cases, now under review by our high court, have concluded that section 1170.95 subdivision (c) requires the trial court to make two *separate* prima facie determinations:  one *before* appointing counsel and receiving briefing, and one after those procedural steps have been taken. (See, e.g., *People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 327-329, review granted Mar. 18, 2020; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598.)  We agree with these cases.

"The first sentence of section 1170.95, subdivision (c), directs the court to review the petition and determine if the petitioner has made the requisite prima facie showing. The second sentence provides, if the petitioner has requested counsel, the court must appoint counsel to represent him or her. The third sentence requires the prosecutor to file and serve a response to the petition within 60 days of service of the petition and permits the petitioner to file a reply to the response. The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence: *first, a prima facie showing; thereafter, appointment of counsel for petitioner;* then, briefing by the parties. (*People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140 ['[w]hen the statutory framework is, overall, chronological, courts will construe the timing of particular acts in relation to other acts according to their location within the statute; that is, actions described in the statute occur in the order they appear in the text'];

At the hearing to determine whether to vacate the murder conviction and recall the sentence, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is not eligible for resentencing. (§ 1170.95, subd. (d)(1), (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Id.*, subd. (d)(3).) The parties also may waive a resentencing hearing and stipulate that a defendant "is eligible to have his or her murder conviction vacated and for resentencing." (§ 1170.95, subd. (d)(2).)

II

*Summary Denial Of Section 1170.95 Petition*

Defendant contends the trial court erred by finding she did not establish a prima facie case for resentencing and by summarily denying her petition. She argues none of section 189, subdivision (e)'s prohibitions on resentencing apply to her.[6] Specifically, for subdivision (e)(2) (aiding and abetting with the intent to kill), she contends neither the trial court nor this court in its unpublished decision affirming her convictions found that she aided and abetted Rachal's kidnapping *with the intent to kill*. She notes the prosecutor's closing argument during trial in which he conceded the People could not prove that defendant intended to murder Rachal beyond a reasonable doubt.

And even if the trial court found she was a major participant in the underlying crimes, she contends the court did not decide that she acted with reckless indifference to human life.[7] Thus, the prohibition in section 189, subdivision (e)(3), does not disqualify her from resentencing.

---

[Citations.].)" (*People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 332, review granted Mar. 18, 2020, italics added.)

[6] It is beyond dispute that section 189, subdivision (e)(1) does not apply because Sims, and not defendant, actually killed Rachal. (*Flynn*, *supra*, C028425 at p. 3.)

[7] In *People v. Banks* (2015) 61 Cal.4th 788, 794, our Supreme Court considered under what circumstances an accomplice who lacks the intent to kill may qualify as a

10

The trial court here found that defendant was ineligible for resentencing because "[b]ased on her conduct in furtherance of the crimes, she was a 'major participant' as defined in . . . section 190.2(d)." The court's statement of decision quotes section 190.2, subdivision (d) as follows: "[E]very person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons" is eligible for a sentence of death or life without parole.

Although defendant characterizes the court's statement that "she was a major participant as defined in . . . section 190.2, subdivision (d)" as merely a finding that her participation in the underlying crime was major, but not that she acted with reckless indifference to human life, we disagree with her characterization of the court's ruling. We believe that the trial court's express reference to, and earlier quotation of, section 190.2, subdivision (d), necessarily includes implicit findings that she was a major

---

major participant under section 190.2. The *Banks* court provided a list of nonexclusive factors to consider: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803.) The court emphasized, however, that "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

In *People v. Clark* (2016) 63 Cal.4th 522, the Supreme Court announced related considerations relevant to determining whether a defendant acted with "reckless indifference to human life." These factors included the knowledge of, use, and number of weapons, the defendant's physical presence at the crime and opportunities to restrain the crime or aid the victim, the duration of the felony, the defendant's knowledge of a cohort's likelihood of killing, and the defendant's efforts to minimize the risks of violence during the felony. (*Id.* at pp. 618-623.)

11

participant who acted with reckless indifference to human life. Although perhaps unartfully phrased, since section 190.2, subdivision (d) "does not *define* what qualifies as major participation" (*People v. Banks*, *supra*, 61 Cal.4th at p. 798, italics added), the thrust of the court's statement referencing section 190.2, subdivision (d) was that the court found, based on the record of conviction, including this court's prior opinion, that defendant satisfied the requirements found in that statute. Because liability under section 190.2, subdivision (d) is premised on being a major participant *and* acting with reckless indifference to human life, the court's reference to the specific statute and subdivision in its findings implicitly covered both requirements. (*Banks*, at p. 798 [§ 190.2, subd. (d) "imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life"].)

Nevertheless, regardless of whether the trial court found that defendant was a major participant who acted with reckless indifference to human life, or whether it found *only* that she was a major participant in the underlying crimes without reaching the reckless indifference issue, we conclude the trial court engaged in improper fact-finding under section 1170.95 when considering whether defendant had established the requisite prima facie eligibility showing under the statute. (See, e.g., *People v. Drayton* (2020) 47 Cal.App.5th 965, 980-981 [analogizing to habeas corpus procedures to determine when trial court may engage in fact-finding or credibility determinations in considering a defendant's prima facie showing].) As *Drayton* explained, "when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petitioner's assertions, but it need not credit factual assertions that are untrue as a matter of law -- for example, a petitioner's assertion that a particular conviction is eligible for relief where

12

the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing." (*Drayton*, at p. 980.) The authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d) is thus "limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, at p. 980.)

If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95, subdivision (a), then the trial court should issue an order to show cause. (§ 1170.95, subd. (c); *People v. Drayton*, *supra*, 47 Cal.App.5th at pp. 980-981.) Once the trial court issues the order to show cause under section 1170.95, subdivision (c), it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subdivision (d), unless the parties waive the hearing and stipulate to the defendant's entitlement to relief. (§ 1170.95, subd. (d)(2).)

Here, the trial court erred under section 1170.95, subdivision (c) in summarily denying defendant's petition because defendant made a prima facie showing of eligibility for relief. She filed a petition stating: (1) she was charged with murder under a theory of felony murder; (2) she was convicted of first degree felony murder; and (3) she could not be convicted of first degree felony murder under the post-January 1, 2019, definition of murder because she was not the actual killer, she did not aid and abet the actual killer with an intent to kill, and she was not a major participant in the underlying kidnapping who acted with reckless indifference to human life as described in section 190.2, subdivision (d). (§ 1170.95, subd. (a).) There were no facts in the trial court record that, as a matter of law, refuted defendant's assertion that she had been convicted of first

13

degree murder on a theory of felony murder. While our unpublished opinion found that her participation in the underlying felony was "major," having "facilitated th[e] murder from start to finish" (*Flynn*, *supra*, C028425 at p. 12), it did not directly address whether she acted with reckless indifference to human life. Nor was defendant charged with, and the jury did not find true, a kidnapping-murder special circumstance under section 190.2.

At this stage of the petition review process under section 1170.95, subdivision (c), the trial court should not have engaged in any fact-finding to determine whether defendant was a major participant who acted with reckless indifference to human life. The *Banks* and *Clark* tests, which govern such issues, necessarily require the weighing of facts and drawing inferences. (*People v. Banks*, *supra*, 61 Cal.4th at p. 803; *People v. Clark*, *supra*, 63 Cal.4th at pp. 618-623.) In assessing whether defendant made a prima facie eligibility showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted defendant's asserted facts as true. Assuming the facts asserted in defendant's petition were true, she fulfilled the requirements for relief listed in section 1170.95, subdivision (a). Thus, the trial court should have appointed her counsel as requested, obtained briefing from the parties, and issued an order to show cause for an evidentiary hearing. (*People v. Drayton*, *supra*, 47 Cal.App.5th at pp. 982-983.) We therefore reverse the trial court's order denying the petition and remand with directions to appoint defendant counsel, issue an order to show cause under section 1170.95, subdivision (c), and hold a hearing under section 1170.95, subdivision (d). We express no opinion about whether defendant is entitled to relief following the hearing. (§ 1170.95, subd. (d)(2).)

## DISPOSITION

The order denying defendant's petition for resentencing under section 1170.95 is reversed. The matter is remanded with directions to appoint defendant counsel, to issue an order to show cause, and hold a hearing to determine whether to vacate

defendant's murder conviction and recall her sentence and resentence her.  (§ 1170.95, subds. (c), (d).)


                                                /s/_____
                                                Robie, Acting P. J.

We concur:


/s/_____
Mauro, J.


/s/_____
Krause, J.

15